Do you want to get started? Yes, Your Honor. Thank you. May it please the court, counsel. Your Honor, this is a case on summary judgment, so this is a de novo review. Detective Liebhardt admitted the catalyst for all the case, the police action against Gregory Rodgers, was his complaint against police officers for misconduct. Resulting from that complaint, fabricated charges of felony unlawful concealment of firearm were pursued against Gregory Rodgers when he had a concealed carry permit and when he was on his own property, which had leasehold interest, which exempted him and permitted him to lawfully conceal a firearm even without the permit. Now, that's your claim that the seizure was unlawful because he was on the leasehold? Yes, Your Honor. By Missouri law, he lawfully, he was on possessory interest. Missouri statute clearly says that you're exempted from the concealment charge if you're on property that you have a possessory interest over. As a leaseholder, a tenant, he had possessory interest over the common areas of the apartment ground. Is there any Missouri court decisions that spell out what that means to have a possessory interest? Well, Your Honor, there are, and I cite them in the brief, there are Missouri case law that a lease of the true owner of the real property. During the duration of the lease... What if it's a multi-dwelling situation? How much does the tenant step into that? Is that clear? Well, Your Honor, they'd be treated as tenants in common. In areas that aren't designated pursuant to the contract between the landlord and the tenant, they would have joint and common tenancy rights to that area. I think that's clear black letter property law that as a tenant, you may share specific portions of the property with other tenants under the lease, the common areas, and have exclusive control of the residential portion of the leasehold. And I think that's black letter law, Your Honor. I think that's easily understood, which is why the Missouri legislature wrote possessory interest. They made it broad so that would cover if you have the right of any sort of license, much less a lease, you're protected and may lawfully conceal a firearm on that property. In addition, Your Honor, he had a concealed carry permit, to which he told when he was being arrested on the municipal failure to appear warrant, which he told officers Quintana and Leibler. That's the Florida permit? That is the Florida permit. He didn't have it in his possession. He told the officers he had one, right? He told the officers. It was in his apartment. He was outside of his apartment. And so he told the officers that they easily could have checked, and they admitted they could have checked for the Florida database, but they never even told Greg Rogers that they believed he was unlawfully concealing a firearm. At no time did Officer Quintana confront him with the accusation, you're unlawfully concealing a firearm, I'm going to charge you with that. If he had done so, he would have been, once again, re-informed, no, I've got a Florida concealed carry permit, and I'm on my property, my apartment ground. Well, were the police required to make a statement at that point? Well, Your Honor, I think as the Sixth Circuit said, in the case cited in here, you can't make unsubstantiated arrest with impunity. You can't ignore exculpatory information. And so they had a duty to determine whether he had an affirmative defense. And that duty would have required that they inquire of him, do you have a concealed carry permit? They knew he had shown other officers in January 2011 his permit. These were the officers who later assaulted him, which he filed a complaint against them, and which were the catalyst for why they were retaliating against him by falsely charging him with unlawfully concealing a firearm, so they could seize his weapons and punish him for having filed a misconduct complaint against Columbia police officers. Your Honor, in addition, they seized, after taking Greg to the police station and having him in custody, they asked him to surrender all firearms. They alleged that he was unlawfully in possession of a firearm. They made the warrant declaration, and a judge approved that, but within the warrant declaration, there was no objectively reasonable basis for probable cause. So the warrant was facially invalid because one, Greg wasn't a felon. Two, he wasn't a fugitive from justice. Three, he wasn't a judge mentally incompetent. Those are the grounds on which you can be unlawfully in possession of a firearm. He fit none of those grounds, so they got a warrant which was alleged in the warrant, the fugitive from justice? No, Your Honor, it wasn't alleged in the warrant. They talked about him missing the court date, but it wasn't. So that's on the basis on which they're now defending it as fugitive from justice. I believe that's the argument they've come up with now, Your Honor, but a municipal ordinance violation is a civil matter under Missouri law. As I've cited extensively in the brief, it is only given quasi-criminal treatment. It is not a criminal matter. He failed to appear for what proceeding? He had a court date on a traffic incident. Traffic. His doctor had faxed a note into the court saying, I don't want him coming to court this afternoon because he's got a heart incident, he's under our treatment, we want him to get bed rest. So that doctor's note was faxed to the court, but the court had been given ex parte communications from the police officers that Greg had threatened to, what, kill the judge, that judge presiding with the municipal court, and that Greg had threatened to kill police officers and blow up the police department. Now those allegations are completely spurious. They even admit there was no probable cause to believe those allegations, yet they included them within the warrant affidavit. It's black-letter law that you have to have probable cause to believe information you put within a warrant affidavit. They put information they knew had no probable cause to believe from an earlier time, and that was part of the basis by which I'm sure Judge Crane was like, well this guy sounds dangerous, I'll go ahead and let you take his weapons and we'll figure out later. Because these are very serious allegations. I mean threatening to kill a judge, threatening to blow up a police department, threatening to kill police officers are very serious allegations. They're baseless. But I understand why Judge Crane, out of an abundance of caution, issued a warrant when there was no legal basis to issue it. The state should not be allowed to misconduct. In addition, once they got the warrant from Judge Crane, they came and they seized one gun from the area described within the warrant, that was an AR-15, and then they went to a management storage area, which they accessed with, because Greg had been the property manager for his father, Dr. Dean Alan Rogers, who's here with us today. And they got into the management storage area and were able to coerce the combination to the safe where Dr. Rogers kept his firearms and there were some Greg's firearms in there and they seized those. And they kept those even though there was no legal nexus with any criminal charges. When Alan tried to get his firearms back, they refused to give his firearms back and they kept them for a year for safekeeping. Safekeeping is not a legitimate basis to seize somebody's firearms. They went to real property and seized firearms without legal cause and refused to give them back and never provided a due process hearing, as they are required under precedent from this court. This court in Walters v. Wolfe said the valid seizure ended with the dismissal of the predicate charges and the withdrawal of the warrant in Edmonton County. That's at page 314, 660, 314. That is a standard, it's understandable. If there is a pending matter related to the seizure, if the seizure was initially valid, which this one wasn't, once those charges are dismissed, that's a safekeeping. There were no charges related to the firearms they seized on August 13th, 2011. They seized them for safekeeping. The government is not allowed to seize firearms for safekeeping. They're allowed to seize them for related to criminal action or if they're abandoned and then that's safekeeping. But they're not allowed to go to your home and your real property and seize firearms for safekeeping. It was unlawful. They kept them. When demanded for their return, they refused to return them. In fact, the prosecutor's continued to oppose them when the police department finally came to its senses and said, you know what, we really don't have a basis to keep Dr. Rogers' weapons. We'll give them back. They gave them back in September of 2012, 13 months after the seizure. And a month later, they gave back the remaining weapons they seized from the gun safe to Greg Rogers because they knew there was no lawful basis to keep those. They kept Greg's firearm they seized on August 12th because it was related to a criminal charge, a spurious criminal charge for which there was no objective or reasonable basis under the Fourth Amendment. But there was, on a due process analysis, there was at least a due process consideration as to why they could keep that firearm during the pendency of those charges. Now, the district circuit court in Boone County dismissed the originally unlawful concealment was changed to unlawful use, alleging that he was a fugitive from justice. The Boone County Court dismissed that. The state appealed. They lost their appeal on February 5th, 2013, and they still maintained it without providing a due process appeal. When the court of appeals ended their direct appeal, they had no legal basis to keep the charge, keep the firearm that they seized on August 12th. They needed to provide another due process hearing. They refused. They kept it even though all charges against Greg Rogers were subsequently dismissed by May of 2013. This was a fleeing charge, which did involve the use of the weapon, and they kept it, and they still kept it until after this court dismissed the entire case in summer judgment, refusing to grant the writ of replevant. The court should have at least ruled on the writ of replevant. The court denied the injunction we requested, ordering that they don't do this sort of seizure again, but the court refused to rule on the writ of replevant, and when it dismissed the matter, resolved the writ, I guess, as denied. So we had a right to that, Your Honor, and I'm going to reserve the balance of my time unless there's any questions. Oh, I need this briefly. In the Franklin case, I believe that we've shown in our briefs that he was retaliated against for refusing to consent to the search of his home, which is why his son was, 18 months later, alleged to have possessed his firearm by mail in proximity to his firearm while his son was in North Carolina. They knew that his son was in North Carolina. They knew that he hadn't been, and Detective Jones admitted he had no information that he was even in the state of Missouri in December 2018 before he filled out the probable cause statement, alleging that he was in possession and control and dominion and control of his father's gun by mail in proximity in his father's house, which is a ludicrous charge, and even after they dismissed this ludicrous charge, they still refused to give back Robert Franklin's Eight months past the Missouri statute of limitations for any felony charge to be filed against Robert Franklin, who had no felony charges and had the legal right to possess. Were they claiming that they were considering charges, that the guns were evidence that they needed for some charges they were going to file? Well, Your Honor, there was a Billy Rogers in the residence who, when they came out and surrendered, he had drug charges filed against him. There was never any allegation that he had possessed or used any firearm in his use of drug trafficking. And you know, the state is very active if they have a basis of filing those charges, they file them. They never made any weapons allegations against Billy Rogers. In addition, all those charges were disposed against all of the defendants by pleas in April 2010. So in June 2010, when my client's trying to get his firearms returned, they retaliated against him for not considering to the search. And Mr. Hicks admits, I don't believe him because he didn't consent to the search of his property. Therefore, we're going to charge his son with possessing. I think that's retaliatory because he had the lawful right to refuse consent to search his home. And they retaliated against him for doing that by prosecuting his son as a punitive measure in order to teach the citizens of Columbia, you don't refuse the police's consent if they want to search your home or we'll get you. Thank you, Your Honor. Ms. Weber. May it please the court? The allegations against Boone County, Missouri, Prosecutor Knight, Prosecutor Hicks, Prosecutor Rogers really can fall into just two categories. There's a lot of talk about searches and seizures and return of a stolen firearm and a lot of other issues. But the first of all, the filing in pursuit of criminal charges. And second, criticism of the prosecutors for recommending that items seized pursuant to a search warrant be retained as evidence. And as to both of those issues, absolute immunity applies to the prosecutors. Briefly on the issue of the filing of charges. The law is clear. The Supreme Court has ruled, for instance, in other cases, that prosecutors are entitled to absolute immunity for the filing in pursuit of charges. Those are activities that go to the very heart of what a prosecutor does. The appellants in these cases try to circumvent absolute immunity by arguing that there is no probable cause for these charges. And we've set out in our briefs as to how there is indeed probable cause for all of the charges involved. But even if there were not, the law is clear that absolute immunity still applies to protect those prosecutors from the decision to file and to pursue charges. As to the retention of evidence issues, again, absolute immunity applies. Decisions or really, in this case, they were just recommendations that certain items be retained as evidence. That activity falls squarely in the role of a prosecutor because the prosecutor is the advocate for the state. And the I need in order to present the state's case. So when they recommend that certain items be retained as evidence, they are fitting within that role and absolute immunity applies. The appellants seem to be under the misimpression that they're entitled to a due process hearing after the seizure of these items pursuant to a search warrant. And that's just simply not the law. Because the search warrant provides due process for the seizure of the for as long as the government or law enforcement has a continuing interest in those items. And there was indeed a continuing government interest in the seized weapons in both the Rogers case and in the Franklin case. What was that? Can you speak to that? I can. In the Franklin case, the continuing government interest, there were two. It was a dual interest. The federal government had an interest in retaining those items potentially as evidence in connection with their drug trafficking prosecution. And it wasn't just Billy Rogers who was involved in that prosecution. There were some 14 other defendants. There were additional defendants on top of that or potential defendants who they were considering bringing charges against. So the federal government had the interest in retaining those items. In addition, the state prosecutors also had an interest, at least in retaining the Vulcan 45 that was found in Raymond Franklin's bedroom. And the only evidence of any recommendation made by any of the prosecutors who were parties in this case was a recommendation that that Vulcan 45 be retained. And the recommendation was made when the prosecutor was considering its use as evidence in a proceeding. In the Rogers case, there was a continuing government interest because the Boone County prosecutor, Cassandra Rogers, had an interest in retaining all of those weapons as evidence in the criminal proceedings against Greg Rogers. How many years can they continue to investigate? I'm sorry? How many years can they, is it reasonable for them to continue with their investigation? Well, in the Rogers case, charges were pending the entire time that those weapons were held. But it was a charge based on one firearm, wasn't it? Well, no. I understand that Appellant's Counsel would characterize it that way, but no. The prosecutor, Cassandra Rogers, has all of these weapons as evidence in the pursuit of the charge for unlawful possession. And the reason is that her theory was Greg Rogers was a fugitive from justice. He had expressed his intention not to be taken by the police, not to be arrested by the police. He had expressed some intention to fight back against the police. And these were in recorded phone conversations. So her opinion as the prosecutor was, these items are relevant to his state of mind as a fugitive from justice. Here he is with all of these weapons expressing that he's not going to be arrested and he is not going to be handcuffed by police. And the fact that he has all of these weapons, including an AR-15 sitting in his living room, shows that intent. More importantly, it's her discretion as a prosecutor as to which of those items of evidence she needs in order to present the state's case. And she has absolute immunity for that Mr. Letterman. May it please the court, counsel. And briefly if I can touch on something Mr. Weiss said regarding the, I think he's referring to the nine millimeter pistol. Even after the Western District Court of Appeals in Missouri affirmed the Boone County Circuit Court's dismissal of the unlawful possession of weapons charged based on the fugitive of justice theory, there still was a resisting arrest charge. And Miss Rogers indicated that she wanted the nine millimeter pistol as evidence in that charge. Uh, CPD maintained possession of that pistol until the special prosecutor, Jules DeCoster, uh, decided to nolly process and inform CPD that, uh, he did not need it anymore. And at that point on July 18th, uh, he informed them on July 30th. Uh, Michelle heater, evidence custodian for CPD informed Mr Rogers his nine millimeter pistol was available to pick up whenever he wanted to. And from that point until I believe it's February 2014, it remained at CPD. Uh, Mr Weiss took the position he would not pick up the firearm absent an injunction or a court order. And so it basically sat there. But it related to the resisting arrest charge. What about the arrest of Rogers on the at the apartment complex? I'm concerned about this statute that says he's entitled to possess it on a premises over which he has possession authority or control. Yes, Your Honor. I have to confess. I there is no case in Missouri that talk that interprets that statute and says what a possessory interest is. So I think we have to go to landlord tenant law. And I confess that I defend some slip and fall cases involving multifamily dwellings. And so I think we can extrapolate from that law what who controls the common element. If if Mr Rogers controls a common element of the apartment complex like the grounds, then if if Mr Rogers doesn't do a good enough job clearing ice and snow from the common element like the driveway, then he would be liable if somebody slips and falls on it. But he's not liable for that. And there's no case in Missouri that's ever found that the tenant absent a special term in the lease has a maintain the common elements of a multifamily dwelling unit. It would completely change Missouri law. If that were the case, you have to have a possessory interest. A right to use is not a possessory interest. Somebody that works at somebody works in my law firm doesn't have a possessory interest over the property which my law firm sits. So they make air concealed weapons whenever they want to absent permission. What about in his own unit? His own unit probably would have been a different story. Your honor. I think if he were inside of his own unit, then he has a possessory interest according to regular landlord tenant law to carry concealed in his own unit. Absolutely. He was outside of the unit when he was arrested. You're saying he doesn't have possession over the common areas. He doesn't have possession. Yes, your honor. He has a right to use the common areas. If he had possession of those common areas and he could be held liable just like the landlord for failing to there is absolutely no case law in Missouri that I found interpreting that section. But also C. P. D. Officers would be entitled to qualify immediately because there's no language explaining what that portion of the statute means. I want to address the safekeeping issue as well. Your honor. I believe that's a red herring. Uh, the guns were seized pursuant to a warrant describing unlawful possession and unlawful possession of a weapon doesn't have to be the weapon on your person. When you are arrested, it can be in your possessory interest, which would be in his home. The guns were logged as safekeeping at C. P. D. They were not seized for safekeeping. The evidence you go back and look at the summary judgment motions is very clear. The prosecutor, one of those guns collected for the unlawful use of possession charge should they decide to file it, which they did. Uh, Jeff Jones, the sergeant in charge of the special crimes unit that basically coordinated the arrest, wanted those items seized for unlawful possession of a weapon. The safekeeping was a was a logging issue at C. P. D. They absolutely were intended as evidence and Miss Rogers attested to that in the underlying case. There's no question about it. Mhm. And C. P. D. Maintained possession of those guns throughout the time. There's a criminal interest. There's no question about that. Uh, they were released prior to when they would have had to because Captain Richenberger is not a part of this case. Looked at him, said they were coded as safekeeping. I don't have to check with the prosecutor and I can release them. There was no requirement to evidentiary area. Yes, they were kept in the evidentiary area, but the log in was not evidence. It was safekeeping. And frankly, that probably was a mistake, but doesn't affect the fact that they were evidence. Your honor. Thank you. Smith. May it please the court. Dara Smith for the United States. The government's intervened to respond to plaintiff's challenge is to the statutory scheme permitting senior judges to adjudicate cases. This court recently addressed that issue and these challenges in Williams versus Decker, which was a published decision, and we believe that Williams controls the outcome of this case. The court rejected those challenges and what? What was the date that that was announced? It's filed that it was filed. Um, I'm not sure about the filing date, your honor. I believe the decision was July 18. Then that would be the filing date. Okay. Yes, your honor. Um, so about two months ago. So the plaintiff's challenges in this case have no merit any more than they did in Williams. And if the court has any questions, I'm happy to answer them. Other than that, we believe that Williams controls I don't think anybody has a question. Thank you for you. I'm sorry. Okay, Mr Wine. Your firearm. I don't believe that the prosecutor has absolute and unfettered discretion about the seizure and retention of property. I think if this court looks to the case, I cited in the reply brief state versus sled, the activity has to have a sufficient nexus to the property for there to be a legal connection. Alan Rogers firearms had no legal connection to Greg to Greg Rogers unlawful concealment charge. Despite the fact that charge was fabricated, there was no legal basis to file it. Now, the statute in Missouri is in his or her dwelling unit or upon premises of which the actor has possession, authority or control. Every tenant in a common area can exclude other non tenants can have a trespass warning issued to them to stay off the property. That's black little law. Now, the sort of control necessary for a slip and fall injury is a canard. That's not the net level of control you need to have possession authority or control under the concealed weapons statute to be exempt and lawfully permitted to conceal a firearm. Any reasonably competent officer could have read the statute. You don't need a case law interpreting it. The statute or upon premises over which the actress possession authority or control as a tenant. He has control over non tenants on his property. He has possessory interest over that property. He cannot be excluded from that property. The common areas. He's got a lawful right to be on the common areas. His authority is limited to non tenants, co tenants. He can't include, but non tenants, he can give a trespass warning and exclude them from his property. He can expel them from his property and they can lawfully be for trespassing. Now, with regard to, um, looks at the I cite state for slid for the nexus with regard to senior judge issue. I cite Judge Posner, who's in his treatise that judge positive Richard positive seven circuit that senior judges effectively relinquished life tenure when they when they accept that because now they're subject to no discretionary denial without review or check. Now, this court, if it wanted to frame a constitutional solution and provide a relief that there could not be indefinite denial of the right to judge, could shape the argument so that the statute has constitutional mustard. But the statute, as written, violates life tenure in the senior judge session. In addition, may I have one minute? You're um, in addition, Missouri's authorized 13 federal judges when the judge obtains seniors eligibility, the rule of 80. They may they are endowed by the way the statute is being applied with the ability to create additional judgeship and continue judging. Congress did not intend to give judges the ability to create an additional judgeship and continue judging. Congress placed a limit. Do you base that? So what? What? What do you base that statement on? Well, your Congress assigns all the authorized jurisdictions to active judges in the statute. And if there's a vacancy, then senior judges can fill that vacancy. It's like a utility player. They're available. If there's a vacancy, Congress controls the docket and control of how many judges are granted commissions authority. And while the Senate's been granting commissions to judges in that scenario for quite some time, maybe the house is your backstop. Well, you're on. I think the statutory is flawed. I think there is a great argument for either exempting or waiving the requirement if they attain senior status as long as they're doing the judging. But the statute is not written that way. As it's written and it's being applied, judges, when they attain senior status, can create another judgeship. That's not a power we invest in the judiciary. That is a congressional power. That is a congressional authority. And so the way it's being interpreted, the way it's being applied now is we've got the 13 judges in Missouri, and we've got, I think, nine senior judges who are hearing cases. So these judges have created nine additional judges. Now, not all of them are hearing full case laws. Judge Lowry has a very busy docket. So I don't think Congress, when they put the limit, expected senior judges to, if there was no vacancy, to continue hearing cases because it granted specific authority in the statute. And the Williams case, there is still a pending motion for a hearing that's not been ruled on. So I don't believe that's absolute controlling as far as what the case law is. That matter is still not finally resolved. And frankly, it's likely going up, whether they hear it or not. But, Your Honor, I'm out of time. And so unless the court wants to grant me additional time, I will stop now. Are there any questions? Thank you very much for your arguments. Thank you, Your Honor. We'll take them under advisement and issue our decision in due time.